IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KAREN KINNEE,                                            Civ. No. 07-1463-AC

                Plaintiff,                           OPINION AND ORDER

       v.

SHACK, INC., a domestic business
corporation, doing business as BUFFALO
GAP SALOON & EATERY,

                Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

This opinion addresses three motions: Plaintiff's Motion to Compel and for Protective Order (#10) ("Plaintiff's Motion to Compel"); Plaintiff's Motion for Protective Order (#12); and

1

Defendant's Motion to Compel (#22). Because the issues in the three motions are intertwined, they will be considered on an issue, rather than a motion, basis.

*Background*

Plaintiff Karen Kinnee ("Kinnee") worked for Shack, Inc., d/b/a Buffalo Gap Saloon & Eatery ("Buffalo Gap") from October 5, 1995, until August 9, 2005, when, she alleges, Buffalo Gap effectively terminated her employment. Kinnee asserts claims of sexual harassment and retaliation against Buffalo Gap and seeks compensatory and equitable relief, as well as attorney fees and costs. Buffalo Gap denies Kinnee's allegations and asserts, among other defenses, that Kinnee failed to utilize preventive and corrective opportunities and that she failed to mitigate any damages she might have suffered. Buffalo Gap also asserts a counterclaim against Kinnee for its attorney fees and costs.

*Kinnee's Motion to Compel*

Kinnee moves to compel Buffalo Gap to respond to four interrogatories, specifically Interrogatory Nos. 4, 5, 8, and 9.

1. Interrogatory No. 4.

Kinnee's Interrogatory No. 4 states, in relevant part: "If defendants or defendants' agents conducted any investigation or investigations into any matter relating to plaintiff . . . describe fully the date, scope, findings, persons interviewed, information received, and conclusions reached by virtue of such investigation or investigations." (Plaintiff's Memo in Support of Motion to Compel ("Pl.'s Mot. to Compel") 3.) Buffalo Gap argues that it need not answer this interrogatory for three reasons: the information requested is privileged, Buffalo Gap already has produced Kinnee's personnel file, and the interrogatory is impermissible in light of Local Rule ("LR") 33.1(d). *U.S.*

2

*District Court, District of Oregon, Local Rules of Civil Practice*

If Buffalo Gap conducted an investigation into Kinnee's complaint of sexual harassment and retaliation that is neither privileged nor contained in the personnel file, it must be produced. Buffalo Gap represents that it already has produced Kinnee's personnel file in response to this interrogatory. (Defendant's Response to Plaintiff's Motion to Compel ("Def.'s Response") 2; Gamblin Declaration ("Gamblin Decl.") ¶ 12.) To the extent that all non-privileged investigations are contained in that file, Buffalo Gap has satisfied its obligation. *See* Fed. R. Civ. P. ("Rule") 33(d) (permitting party to respond to an interrogatory by producing responsive business records). To the extent that Buffalo Gap claims as privileged documents regarding investigations it conducted of Kinnee's allegations, it has produced an appropriate privilege log pursuant to Rule 26(b)(5)(A)(ii) so that Kinnee may evaluate the claim of privilege. (Gamblin Decl. ¶ 12; Gamblin Decl. Ex. 9.) *See also* LR 26.7(b) (privilege log must be provided "within a reasonable time" of timely asserting privilege objection). Accordingly, Kinnee's motion with respect to Interrogatory No. 4 is denied.[1]

2. Interrogatory Nos. 5, 8, and 9.

Rule 26 defines discoverable material as "any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). This applies to interrogatories, as governed by Rule 33, which states, in relevant part, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact of the application of law to fact . . . ." Rule 33(a)(2). However, LR 33.1(d) prohibits "broad general interrogatories, such as those which ask an opposing party to *'state all facts on which a contention is based'* or to *'apply law to facts'*, are not permitted." (emphasis in original.)

---

[1] The court does not consider Interrogatory No. 4 to be a "contention interrogatory," as explained, *infra*.

In *EEOC, et al. v. U.S. Bakery*, 2003 U.S. Dist. LEXIS 25529 (D. Or. Nov. 20, 2003), Judge Haggerty explained the relationship between the federal rules and this district's local rules. The plaintiff requested "the factual and legal basis [the defendant] relie[d] on in its third affirmative defense." *Id*. at *5. "[LR] 33.1(d) is not inconsistent with the Federal Rules of Civil Procedure . . . Although interrogatories may not extend to legal issues *unrelated* to the facts of the case, a party may appropriately pose an interrogatory that calls for a factual opinion or contention relating to the facts of the case or the application of law to the facts of the case." *Id.* at *6-*7 (emphasis in original). Judge Haggerty characterized LR 33.1(d) as prohibiting only "overly broad interrogatories that ask for the general application of law to fact." *Id.* at *7. The court ordered the defendant to respond to this interrogatory. *Id*.

The interrogatories that Buffalo Gap asserts are impermissible "contention interrogatories," specifically Interrogatory Nos. 5, 8, and 9, are substantially similar to the interrogatories in *EEOC v. U.S. Bakery*. Interrogatory No. 5 asks Buffalo Gap to "explain fully the nature of the [plaintiff's] misconduct, actions taken by defendant regarding such misconduct, and the persons with knowledge of the misconduct." (Pl.'s Mot. to Compel 4.) Although not explicitly identified, Interrogatory No. 5 appears aimed at Buffalo Gap's fifth affirmative defense, "After-Acquired Evidence." (Answer 4.) "The 'after-acquired evidence' doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later 'discovers' evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1070-71 (9th Cir. 2004) (citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360-63 (1995)). If Buffalo Gap intends to assert that it would have terminated Kinnee's employment for her own misconduct had it known of it, thus barring or limiting

4

her damages even if she proves her harassment or retaliation claims, then inquiry into the basis of that affirmative defense is reasonably calculated to lead to the discovery of relevant evidence. *See also* Rule 26(b)(1) (Parties may obtain discovery that includes "the identity and location of persons who know of any discoverable matter."). Accordingly, Kinnee's Interrogatory No. 5 is not an impermissible request and is not barred by LR 33.1(d), and Buffalo Gap must answer it.

Similarly, Interrogatory Nos. 8 and 9 seek to discover the basis for other of Buffalo Gap's affirmative defenses, specifically its sixth affirmative defense, "Unclean Hands," and its seventh affirmative defense "Reasonable Care." Interrogatory No. 8 asks: "Explain each and every act known to defendant which constitutes 'unclean hands.'" This interrogatory neither asks Buffalo Gap to state all facts nor apply any law to any facts, as proscribed by Local Rule 33.1(d). Rather, it merely asks Buffalo Gap to *explain* the basis of its affirmative defense and, therefore, is a permissible interrogatory aimed at discoverable information. Interrogatory No. 9 states, in relevant part: "Explain each and every way in which defendant exercised reasonable care . . . ." (Pl.'s Mot. to Compel 5.) Again, the request is for Buffalo Gap to provide its basis for asserting reasonable care as an affirmative defense. The interrogatory does not request every fact or ask Buffalo Gap to apply law to facts. Accordingly, Buffalo Gap also must answer Kinnee's Interrogatory Nos. 8, and 9.

*Buffalo Gap's Motion to Compel and Kinnee's Motion for Protective Order –*
*Tax Returns and Medical Records*

Buffalo Gap seeks to compel production of Kinnee's complete tax returns for the time period following her termination from Buffalo Gap's employment to the present, as well as Kinnee's complete mental health and medical records without date limitation. Buffalo Gap argues that it is entitled to discover information on these topics pertaining to the period *after* February 1, 2006,

because Kinnee's complaint allegations and deposition testimony have placed at issue information beyond this date.

1.  Tax Returns

Kinnee states in her complaint that she "has suffered economic damages through approximately February 1, 2006." (Complaint ("Compl.") ¶ 30.) However, in her prayer for relief, Kinnee requests that the court "[o]rder defendant to make plaintiff whole by compensating her for past and future pecuniary losses, including expenses, lost past and future earnings and benefits of employment, and other such losses as are proved at trial." *Id.* at ¶ 31. Although Kinnee's prayer suggests that she seeks damages beyond February 1, 2006, the substantive allegations in her complaint determine the remedy she seeks. First, as Kinnee points out, "the prayer for relief is no part of the cause of action and the parties are entitled to such relief as the pleadings make out." *Johnson v. Granquist*, 191 F. Supp. 591, 592 (D. Or. 1961). Second, and more to the point, Kinnee has acknowledged that her prayer was in error (Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel ("Pl.'s Opp'n") 2), and she has expressly and repeatedly represented that her damages are limited to the time period between her August 9, 2005, termination and February 1, 2006, and that she will not seek damages beyond that date. (Plaintiff's Memorandum in Support Motion for Protective Order ("Pl.'s Mot. for Protective Order") 1, 6, 8.) For these reasons, discovery of information and documents regarding Kinnee's income extends to and includes February 1, 2006, but not beyond. Accordingly, to the extent that Buffalo Gap's motion to compel seeks information and production of documents that pertain to wages earned after February 1, 2006, that motion is denied and Kinnee's motion for protective order is granted.[2]

---

[2] Documents dated after February 1, 2006, but which pertain to events occurring on or before that date are discoverable.

Buffalo Gap argues that Kinnee must produce more than W-2 forms to establish her post-termination income and that she must produce her tax returns in their entirety. A similar situation arose in *Garcia v. Liberty Homes, Inc.*, Civ. No. 05-31, slip op. (D. Or. July 27, 2005). There, plaintiff's income was relevant to mitigation and he already had produced his 2004 W-2 form, but defendant sought to compel his "state and federal tax returns and all returns for any partnership, corporation or other entity in which plaintiff has or had an interest . . . ." *Id.* at 1-2. The court observed that tax returns were not privileged and cited a two-prong test applied in other circuits to determine whether tax returns are discoverable: "(1) the returns must be relevant to the action and (2) the information contained therein must be otherwise unobtainable." *Id.* at 3 (citing *Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001)). Judge Haggerty noted that this test placed the burden to demonstrate relevancy on the party seeking production, while placing the burden of identifying alternative sources for the information sought on the party resisting disclosure. *Id.* Judge Haggerty concluded that "plaintiff [had] provided a reasonable alternative source for the relevant information, in the form of W-2 forms and a partial copy of his 2004 tax return." *Id.*

Here, Kinnee states that she "has produced all records of remunerative income for 2005 and 2006, which extends six months beyond the end of her claim for economic damages." (Pl.'s Opp'n 4.) Specifically, Kinnee produced her W-2 forms for the relevant years. (Pl.'s Mot. for Protective Order 2.) Kinnee further states that she has no 1099 or Schedule C income to report. *Id*.

On the facts of this case, Kinnee's production of her W-2 forms for the relevant years is an appropriate alternative to production of her complete tax returns, and Buffalo Gap has not provided evidence or argument to demonstrate that the W-2 forms are not a sufficient alternative. Furthermore, Kinnee states she has no documents pertaining to 1099 or Schedule C income. Just

7

as the court must accept Buffalo Gap's representation that it has already produced all non-privileged documents related to its investigation into her harassment complaints, the court must accept Kinnee's representation that she has no documents of the type Buffalo Gap seeks. In these matters, barring contradicting evidence, the court typically relies upon a party's representations about the information or documents it has produced or does not possess. *See, e.g.*, *Gallagher v. Lincoln County, et al.*, Civ. No. 07-1213, slip op. at 2-3 (D. Or. Feb. 28, 2008) (denying defendant's motion to compel in part in reliance on plaintiff's representation that she had no documents related to her employment claims, had not been employed since defendant terminated her employment, and kept no notes or other documents regarding her employment with defendant). Accordingly, Buffalo Gap's motion to compel production of Kinnee's complete tax returns is denied.

2. Medical Records

Kinnee alleges in her complaint that she has "suffered severe emotional distress during her employment and for a period of several months thereafter, through approximately February 1, 2006." *Id.* (Compl. ¶ 30.) Buffalo Gap argues that Kinnee waived this time limitation when she testified at deposition that her emotional distress continues to this day. Even so, Kinnee's express limitation of the damages she seeks establishes the relief that she will be allowed to seek in this case and determines the scope of discovery regarding her damages, including any damages for emotional distress she can establish.

Buffalo Gap also argues that Kinnee waived her ability to limit discovery of her medical records by signing releases with no date restrictions, but this argument overlooks that each medical release Kinnee signed specifies: "This authorization is limited to the following time period: 2/1/96 - 2/1/06." (Gamblin Decl. Ex. 7.) Buffalo Gap further argues that Kinnee's claim for $15,000

8

damages for medical bills, emotional distress damages, and lost wages requires corroborating discovery. However, discovery limited to the six-month period between August 9, 2005, and February 1, 2006, will reveal whether or not this is reasonable compensation.

Finally, Kinnee has not waived the physician-patient privilege in this case by her general allegation of emotional distress from Buffalo Gap's alleged actions. *See, e.g., Gallagher v. Lincoln County,* No. 07-1213, slip op. at 1 (no waiver of psychotherapist-patient privilege where plaintiff did not assert a specific psychiatric injury or disorder, and no waiver of physician-patient privilege where plaintiff did not allege medical treatment for physical injury from defendants' alleged actions); *Thomas v. UPS Ground Freight, Inc., et al.*, Civ. No. 06-1281, slip op. at 3-6 (D. Or. Feb. 15, 2007) (no waiver of psychotherapist-patient or physician patient privileges where plaintiff asserted only "garden-variety" emotional distress damages). Kinnee has expressly represented that she does not intend to rely on the testimony of a psychotherapist and that she does not claim any specific disabilities or medical conditions from Buffalo Gap's alleged actions. (Pl.'s Mot. for Protective Order 7.)

Accordingly, Buffalo Gap's motion to compel medical records after February 1, 2006, is denied.

*Kinee's Motion for Protective Order –*
*Subpoenas of Kinnee's Other Employers*

Kinnee also seeks a protective order to prevent Buffalo Gap from serving subpoenas on her current and former employers. Buffalo Gap argues that these subpoenas are reasonably calculated to lead to discovery of admissible evidence, including information about Kinnee's income, credibility, and failure to mitigate.

In her deposition, Kinnee testified that she worked at two other jobs after her employment with Buffalo Gap ended. Kinnee began the first job in November 2005 and worked there for approximately five weeks, at which time she quit because her "people skills were gone" and because she "couldn't put up with men, the people drinking, and just the whole customer service. And I just lost it all." (Gamblin Decl. Ex. 1, p. 280.) Kinnee found the second job approximately two months later, but she testified that she left that job after "only a couple of months" because "I couldn't do my job anymore … I didn't have the this [sic] customer service skills in me like I used to." *Id*. at 281-82. When asked whether she contended that the reason she could not do these jobs was because of what happened to her at Buffalo Gap, Kinnee replied "That's how I feel. I feel like I'm just so screwed in that environment, that men have no respect for woman [sic]." *Id*. at 282.

Kinnee held both of these jobs on or before February 1, 2006, the end date for her damages claims. By her testimony she placed squarely at issue whether her ability to secure and hold these two jobs was linked to Buffalo Gap's alleged actions, and Buffalo Gap is entitled to seek information about those jobs to assess causation, Kinnee's credibility, and her mitigation of damages. Therefore, Kinnee's motion for a protective order on this point is denied as to these two employers, but granted as to her current employer because Kinnee obtained that job after February 1, 2006. Accordingly, Kinnee's motion to quash Buffalo Gap's subpoenas of her current employer is granted.

*Procedural Implications*

The court's ruling on these motions relies, in large part, on Kinnee's several express representations in her briefing, as well as the allegations in her complaint, that she is limiting her compensatory damages to the six-month period between August 9, 2005, the approximate date of

her alleged termination, and February 1, 2006. Buffalo Gap's discovery efforts therefore are limited to that time period. Consequently, for the duration of this action, including at any trial, Kinnee should not be permitted to plead or seek damages claimed to have occurred beyond February 1, 2006, and she should not be permitted to testify or present other evidence about events occurring after February 1, 2006, but which she might claim relate to Buffalo Gap's alleged actions during her employment.

Finally, the court's ruling pertains to the discovery, not the admissibility, of the information which is the subject of the parties' respective motions. No opinion is intended or expressed regarding the admissibility of any of the information at issue in these motions.

*Conclusion*

As explained above, Kinnee's Motion to Compel is GRANTED in part and DENIED in part, and her Motion for Protective Order is GRANTED in part and DENIED in part, and Buffalo Gap's Motion to Compel is DENIED.

IT IS SO ORDERED.

Dated this 6th day of May, 2008.

      /s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge