IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN KINNEE,

                Plaintiff,                              Civ. No. 07-1463-AC

    v.                                       OPINION AND ORDER

SHACK, INC., a domestic business
corporation, doing business as BUFFALO
GAP SALOON & EATERY,

                                      Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Buffalo Gap Saloon & Eatery moves for summary judgment against Karen Kinnee's sexual harassment lawsuit asserting that Kinnee is judicially estopped from asserting her claim because she did not disclose it as a contingent or unliquidated claim on her bankruptcy petition, which she filed

OPINION AND ORDER                                    1                                   {KPR}

about one year after the alleged harassment began. Buffalo Gap argues that Supreme Court and Ninth Circuit precedent bars Kinnee from asserting her claim here because it is inconsistent with the position she asserted and benefitted from in her bankruptcy proceeding. Because judicial estoppel is an equitable doctrine to be applied in consideration of the facts and circumstances of the individual case, consistent with principles of justice and fairness, and because controlling case law vests the court with discretion to determine whether to apply the doctrine in a particular case, the court denies Buffalo Gap's motion.

*Legal Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2008). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A non-moving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Factual Background*

Buffalo Gap hired Kinnee on October 5, 1995, and she worked there for approximately ten years. (Defendant's Concise Statement of Material Facts ("Def.'s CSMF") ¶ 1.) Kinnee alleges that she was sexually harassed by two coworkers, Jerry Kibbey and Jared Mannis. The harassment began in April or May of 2004 and lasted until her employment at Buffalo Gap ended, on or around August 10, 2005. (Def.'s CSMF ¶ 2.) The parties do not dispute that Kinnee first contemplated a legal claim of sexual harassment one week before her termination. (Plaintiff's Response ("Pl.'s Resp.") CSMF ¶ 14.) At or near that time, Kinnee met with her bankruptcy attorney, Thomas Boardman, and "told him [she] was being harassed at work. Mr. Boardman handed [her] a form and

asked [her] to sign it; he wrote on the form: 'Sexual Harassment at work. Amount Unknown.'" (Kinnee Declaration ("Decl.") ¶ 7.)

Four months earlier, on April 28, 2005, Kinnee had filed for Chapter 7 bankruptcy in United States Bankruptcy Court. (Def.'s Exhibit ("Ex.") 2 at 3.) On her bankruptcy application, Kinnee indicated that she had no "contingent and unliquidated claims . . . ." (Def.'s Ex. 2 at 11, Item 20.) Pursuant to her bankruptcy claim, Kinnee attended a Meeting with Creditors on June 8, 2005. (Def.'s Ex. 4 at 1.) At the meeting, Kinnee testified that here were no claims or lawsuits that she could file against anyone. (Def.'s Ex. 4 at 4.) On August 17, 2005, the bankruptcy court issued an order discharging Kinnee's debts pursuant to the bankruptcy proceedings, and these debts were actually discharged on September 7, 2005. (Def.'s CSMF ¶ 9.) There is no dispute that at the time of the bankruptcy court's August 2005 order, Kinnee had not disclosed the harassment claim on her original petition or amended her filings to list it as a potential claim. Kinnee acknowledges that she "first sought legal counsel to determine if a claim existed on October 7, 2005 . . . ." (Pl.'s Resp. CSMF ¶ 14.)

*Discussion*

1.   Waiver of Judicial Estoppel as an Affirmative Defense

Kinnee argues, as a threshold matter, that Buffalo Gap cannot assert judicial estoppel, an affirmative defense, because it failed to raise it in the pleadings. Federal Rule of Civil Procedure ("FRCP") 8(c) states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." FED. R. CIV. P. 8(c) (2008). Section (c) gives a non-exclusive list of affirmative defenses, one of which is "estoppel." *Id.* A review of Buffalo Gap's Answer reveals that it pleaded a number of legal and equitable defenses: failure to state a claim, statutes of

limitation, failure to exhaust administrative remedies, failure to mitigate damages, after-acquired evidence, unclean hands, reasonable care, no discrimination, and good faith/business judgment. The affirmative defense of judicial estoppel is absent from this list. As a general rule, the omission of an affirmative defense from the responsive pleading constitutes a waiver of that affirmative defense. *Metcalf v. Golden (In re Adbox, Inc.)*, 488 F.3d 836, 841 (9th Cir. 2007). However, the Ninth Circuit has adopted a liberalized reading of this rule and holds that "[i]n the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) (citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984)).

The relevant inquiry, then, is whether Kinnee has been prejudiced by Buffalo Gap's failure to plead judicial estoppel in its answer. Kinnee makes no allegation and provides no evidence that would demonstrate prejudice; in justification, Buffalo Gap offers several reasons that Kinnee cannot demonstrate prejudice, one of which is dispositive of the issue. Kinnee knew by March 2008 that Buffalo Gap intended to assert as a defense here her failure to disclose the harassment claim in her bankruptcy proceeding. Buffalo Gap points out that "[c]ounsel for both parties have specifically discussed the defense both during discovery and when conferring on the motion." (Def.'s Reply 9.) Indeed, an email from counsel for Buffalo Gap to counsel for Kinnee, dated March 25, 2008, states, "We are attempting to discover whether and why plaintiff failed to disclose her claims against BG to the bankruptcy trustee." (Gamblin Decl. ISO Mot. to Strike (#57), Ex. 3 at 2.) Again, on April 1, 2008, counsel for Buffalo Gap wrote, "We intend to move for summary judgment on the basis that plaintiff is judicially estopped from bringing her claims because she failed to disclose them to the bankruptcy trustee." (Gamblin Decl. ISO Mot. to Strike (#57), Ex. 3 at 1.) This represents clear

notice to Kinnee that Buffalo Gap intended to raise judicial estoppel on summary judgment.

By April 1, 2008, Kinnee had unequivocal notice that Buffalo Gap intended to raise judicial estoppel as an issue in this case, and that it intended to do so by summary judgment motion. Discovery ultimately remained open for another four months and Buffalo Gap did not file its motion until four and one-half months afterwards. Kinnee has not been unfairly surprised or otherwise prejudiced by Buffalo Gap's failure to assert judicial estoppel as an affirmative defense in its answer and raising it instead for the first time on summary judgment. Thus, Buffalo Gap may raise judicial estoppel by summary judgment motion.

2.    Judicial Estoppel

Judicial estoppel is an equitable doctrine invoked at the discretion of the court and the determination to invoke it is "driven by the specific facts of the case." *Johnson v. State of Oregon*, 141 F.3d 1361, 1368 (9th Cir. 1998). "Equity" is defined as "[t]he recourse to principles of justice to correct or supplement the law as applied to particular circumstances." *Black's Law Dictionary* 579 (8th ed. 2004). "Equitable" is defined as "[j]ust; consistent with principles of justice and right." *Id.* at 578.

The doctrine of judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). It is designed to protect the integrity of the courts, including "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings . . . [and] is intended to protect against a litigant playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990), *cert. denied*, 501 U.S. 1260 (1991). Accordingly, the doctrine is not designed to protect the interests of

individual parties. *In re Coastal Plains, Inc. v. Mims*, 179 F.3d 197, 205 (5th Cir. 1999) ("Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary.") (emphasis in original.)

The United States Supreme Court explained the application of judicial estoppel in *New Hampshire v. Maine*, 532 U.S. 742 (2001). It wrote, "[b]ecause the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* at 750 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (CADC 1980) (internal citations omitted). However, the Court held that application of judicial estoppel is not reducible to a set formula,

> Several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly" inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001) (internal citations omitted). Relevant to the instant case, the Court emphasized that "in enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the application of judicial estoppel. Additional factual considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751.

Buffalo Gap asserts that the Ninth Circuit applies the judicial estoppel rigidly where a plaintiff has failed to disclose a claim in a prior or contemporaneous bankruptcy proceeding. It supports its position with this quote from the court of appeals: "a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's

schedules or disclosure statements." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992)). In *Hamilton*, the plaintiff filed for Chapter 7 bankruptcy. On his bankruptcy schedules he "list[ed] a $160,000 residential vandalism *loss* against his estate in his Chapter 7 Financial Statement, but fail[ed] to list the corresponding claims against State Farm as *assets* of the estate." *Id.* at 781 (emphasis in original). The bankruptcy court initially discharged the Hamilton's debts but later vacated the discharge after it learned of the his unreported insurance claim. Subsequently, Hamilton filed suit against State Farm. Even though the bankruptcy court had vacated the discharge of Hamilton's debts, the district court concluded that "Hamilton's claim was barred by the doctrine of judicial estoppel because Hamilton took contradictory positions by first failing to amend his bankruptcy schedules to include his insurance claim and pending bad faith action against State Farm, and then persisting in his attempts to recover on the claims against State Farm." *Id.* 782. Accordingly, the Ninth Circuit affirmed.

Buffalo Gap correctly observes that the doctrine generally will be applied to bar a plaintiff's claim if, in a bankruptcy proceeding, "the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, at 784. Further, the debtor need not know all facts giving rise to a claim to require notification of the possible claim to the bankruptcy court. *Hay*, 978 F.2d at 557. The purpose of the doctrine is to ensure the proper functioning of the bankruptcy process, and the debtor has "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *Hamilton*, at 785 (quoting *In re Coastal Plains v. Mims*, 179 F.3d 197, 208 (5th Cir. 1999)). This duty begins at the time of

filing and "continues for the duration of the bankruptcy proceeding," *id.* at 785, and applies equally to claims that are "contingent, disputed, and unmatured" during the course of the bankruptcy proceeding. *Simoneau v. Nike, Inc.*, 2006 U.S. Dist. LEXIS 17889, at *7 (D. Or. Apr. 6, 2006).

Buffalo Gap's position overlooks the essential feature of its defense: that it is equitable in nature and, thus, a court sitting in equity must not mechanically adhere to a formula or rule to determine whether the defense applies. Indeed, if the Supreme Court had intended rigid application of the judicial estoppel doctrine, it would not have been careful and deliberate in *New Hampshire v. Maine* to observe that there are not "inflexible prerequisites or an exhaustive formula" to the doctrine's application and that "[a]dditional considerations may inform the doctrine's application [by a court] in specific factual contexts." Here, intent plays a meaningful role. Courts in this district have, at times, recognized a plaintiff's good faith as a factor weighing against imposition of judicial estoppel. In *Froshieshar v. Babji*, 2004 WL 2360529 (D. Or. Oct. 15, 2004), Judge Stewart rejected the argument that *Hamilton* should be read to impose an inflexible test. In that case, plaintiff underwent a surgical procedure that ultimately gave rise to a potential malpractice claim. *Id.* at *5-6. Shortly thereafter, the plaintiff and her husband filed for Chapter 7 bankruptcy but did not include the potential malpractice claim in their bankruptcy schedules. *Id.* Plaintiff's bankruptcy attorney disclosed the claim to the bankruptcy trustee, who in turn discussed the possible claim at a meeting of plaintiff's creditors and, upon research and consideration, decided not to administer the asset or pursue the claim. *Id.* Neither the plaintiff nor the bankruptcy trustee amended the schedules to reflect the potential malpractice claim, and when plaintiff filed her malpractice claim against the defendants, they moved for summary judgment based on the doctrine of judicial estoppel. *Id.* at *7-8.

Judge Stewart acknowledged that, taking *Hamilton* at face value, plaintiff's efforts to notify the bankruptcy trustee of the potential claim "[would] not serve as a defense to judicial estoppel, despite the good faith effort it exhibits. However, such a literal interpretation of the Ninth Circuit's wording is unwarranted when the facts of *Hamilton* and the basic purposes of judicial estoppel are fully considered." *Id*. at *17-18. Judge Stewart reasoned that the principle of judicial estoppel was not advanced under the facts of the case: "Judicial estoppel exists to estop parties that have taken inconsistent positions '*calculated* to make a mockery of the judicial system.'" *Id*. at *18-19 (italics by *Froshiesar* court) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002)). In closing, Judge Stewart wrote:

> In the end, it must be remembered that judicial estoppel is an equitable doctrine. It should not be applied "where it would work an injustice." It would not be just, nor serve the general purpose of the doctrine of judicial estoppel, to apply it here where the plaintiffs acted in good faith by informing the trustee of their potential claim, the creditors were informed of the claim, and the bankruptcy court's proceedings were not disrupted.

*Id.* at *23 (quoting *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990)).

In *Schneider v. Unum Life Ins. Co. of America*, 2008 WL 109065 (D. Or. Jan. 8, 2008), District Judge Redden, adopting the findings and recommendation of Magistrate Judge Papak, agreed that intent is a factor in determining whether to apply judicial estoppel. Plaintiff sought legal representation to pursue a claim against defendant for long term disability benefits, but was told repeatedly that no attorney was willing to represent her and that she had only a "fairly slim chance" to prevail. *Id*. at *4. At the first meeting of creditors three weeks later plaintiff stated under oath that she had no legal claims against anyone. *Id*. Months after the bankruptcy court discharged her debts, plaintiff received a letter from defendant that "as part of a multi-state settlement . . . Schneider's [long term disability] claim had been determined to be eligible for reassessment." *Id.*

Based on this new development, plaintiff retained counsel and filed an action in federal court.

The *Schneider* court reviewed *New Hampshire's* three factors and the Ninth Circuit's *Hamilton* decision, and recognized that the determination was an equitable one to be made within the court's discretion and determined by the facts and circumstances of the particular case. *Schneider*, 2008 WL 109065 at *4-5. The court heavily relied on intent to guide its ultimate determination in favor of plaintiff: there was no evidence that plaintiff's "failure to disclose her claim against Unum was intentional concealment or in bad faith" and there was no evidence that plaintiff "was lying in the bushes, waiting for her debts to be discharged through bankruptcy before pursuing her claim against Unum." *Id*. at *6-7. The court concluded by finding "that under existing Ninth Circuit caselaw, intent is a factor that, while not itself dispositive, may be considered in determining whether to apply judicial estoppel." *Id.* at *6.[1]

The Ninth Circuit is not the only circuit to contemplate an intent analysis as part of its position on judicial estoppel. The Third Circuit has also so held:

> Asserting inconsistent positions does not trigger the application of judicial estoppel unless "intentional self-contradiction is . . . used as a means of obtaining unfair advantage." Thus, the doctrine of judicial estoppel does not apply "when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court."

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d. 1996) (quoting *Scarno v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d. Cir. 1953) and *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)). In *Ryan*, the court declined to invoke judicial estoppel arising

---

[1] Buffalo Gap cites *Simoneau v. Nike, Inc.*, 2006 U.S. Dist. LEXIS 17889 (D. Or. April 6, 2006), for the proposition that, in this district, intent is irrelevant to a judicial estoppel analysis. (Def.'s Mem. 6.) *Simoneau* focused on the interpretation of "claim" for purposes of a declarations on a bankruptcy schedule and did not discuss intent or bad faith. Thus, the case is inapposite here.

from failure to disclose in a bankruptcy proceeding because there was "no basis for inferring that Ryan deliberately asserted inconsistent positions in order to gain advantage – i.e., that it played fast and loose with the courts." *Id*. at 363.  The *Ryan* court cited decisions from additional circuits for the proposition that "[a]n inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing." *Id.* (citing *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1428 (7th Cir. 1993) and *Total Petroleum, Inc. v. Davis*, 822 F.2d 734 (8th Cir. 1987)).

In the present case, there is no evidence that Kinnee's failure to disclose her potential sexual harassment claim was an attempt by her to play "fast and loose with the courts" or a calculated move to first obtain discharge through bankruptcy before pursuing her harassment claim.  Indeed, the evidence is to the contrary, as Kinnee disclosed to her bankruptcy attorney the existence of the claim as she prepared to file for bankruptcy protection approximately one week before her alleged discharge.[2]  Although Kinnee's lawsuit is arguably inconsistent with her failure to disclose her potential claim in the bankruptcy proceeding, the court's conclusion here is consistent with the Ninth Circuit's general view that "[j]udicial estoppel applies when a party's position is 'tantamount to a knowing misrepresentation to or even fraud on the court.' . . .If incompatible positions are not based on chicanery . . . judicial estoppel does not apply." *Johnson v. State of Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998) (citation omitted) (reversing summary judgment for employer in part because plaintiff's representations of disability to the Social Security Administration did not estop her from claiming the ability to perform her job in her ADA discrimination lawsuit).[3]

---

[2]  Buffalo Gap moves to strike this evidence.  The court denies this motion, as explained more fully, *infra*.

[3]  The *Johnson* court also reiterated that " judicial estoppel is an equitable doctrine, invoked by a court at its own discretion, and driven by the specific facts of a case." 141 F.3d at 1368, citing

Buffalo Gap argues that even if Kinnee disclosed the potential claim to her bankruptcy attorney, "keeping [a] suit alive merely because plaintiff should not be penalized for the omissions of [her] attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 1296 (11th Cir. 2003), *see also In re Coastal Plains*, 179 F.3d 197, 212 (5th Cir. 1999) (where the court applied judicial estoppel, despite the fact that the debtor relied on his attorneys to accurately complete the bankruptcy application and therefore did not *intentionally* fail to list all claims). First, as previously discussed, this fact bears directly on Kinnee's intent. Second, Buffalo Gap presents no evidence that it has been unfairly prejudiced by Kinnee's nondisclosure in the unrelated bankruptcy proceeding and offers no reason why it would be equitable for the court to allow it the windfall of dismissal while precluding Kinnee from bringing her completely separate and unrelated harassment claim in this court. The *Schneider* court found this fact important to its determination not to apply judicial estoppel: "[t]he inconsistent position poses no detriment to Unum that would not exist if Schneider had disclosed the lawsuit on her schedule." *Schneider*, 2008 WL 109065 at *5.

Taken as a whole, the evidence does not demonstrate that Kinnee operated with intent to deceive the bankruptcy court or to deprive her creditors of potential assets. Therefore, the court concludes that it is inappropriate to apply judicial estoppel in this case. Accordingly, Kinnee's harassment claim against Buffalo Gap is not barred and Buffalo Gap's motion for summary judgment is denied.

3.   Motion to Strike

---

*Yanez v. United States,* 989 F.2d 323, 326 (9th Cir.1993).

Buffalo Gap also moved to strike portions of Kinnee's response materials. In particular, Buffalo Gap moved to strike material that (1) detailed the factual basis for Kinnee's sexual harassment claim, (2) referenced communications between Kinnee and her bankruptcy attorney, and (3) were evidence of the Bureau of Labor and Industry's ("BOLI") finding that there was substantial evidence of sexual harassment. At oral argument, Buffalo Gap objected to Kinnee's representations regarding her mental state at the time of her bankruptcy proceeding, on the ground that they were mere assertions not supported by evidence.

First, Buffalo Gap argues that the factual background of Kinnee's alleged harassment is not relevant to the court's determination. The court disagrees, instead finding that the evidence is relevant to balancing of equities with regard to Buffalo Gap's motion for summary judgment on its equitable estoppel defense; thus, the court denies this portion of the motion. Second, Buffalo Gap argues that Kinnee's communications with her bankruptcy attorney are not admissible because at her deposition, she asserted attorney client privilege and refused to answer questions about these communications. The court concludes, however, that because Buffalo Gap did not move to compel Kinnee's responses regarding communications with her bankruptcy attorney, she is not barred from offering the information in support of her opposition to the summary judgment motion. This portion of the motion is also denied. Third, Buffalo Gap argues that the BOLI determination was not admissible because it was too prejudicial. The court agrees that this evidence is inadmissible for purposes of this motion, and further notes that it did not rely on that submission in deciding the motion. The court grants this portion of the motion to strike and, accordingly, strikes the BOLI

document included as Exhibit 3 to the Kinnee Declaration.[4]  Finally, the court agrees with Buffalo Gap that Kinnee's bare allegations made at oral argument about her mental state should be stricken, because Kinnee failed to present sufficient admissible evidence to support them.  In sum, Buffalo Gap's motion to strike is granted in part and denied in part.

*Conclusion*

For the reasons set forth above, Buffalo Gap's motion for summary judgment is DENIED and Buffalo Gap's motion to strike is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 12th day of November, 2008.

    /s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge

---

[4] The court's ruling is limited to the instant motion.  Ruling on whether or not the BOLI determination is admissible, in whole or in part, for any other purpose in this case will be made at a later time in response to any motions filed by either party.